## GREENBERG *v.* DUNN

[No. 149, September Term, 1966.]

*Decided March 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*William A. Fisher, Jr.,* with whom were *William D. Macmillan* and *Semmes, Bowen & Semmes* on the brief, for appellant.

*Carl A. Durkee* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

At the instance of the plaintiff, Judge Foster removed a nonjury action at law from the Superior Court of Baltimore City to the Circuit Court for Carroll County, and the defendant appealed. The sole issue to be decided is whether the court had the power of removal under the circumstances. The appellee originally sought to dismiss the appeal on the ground that the order appealed from was interlocutory but now concedes that it was final and appealable under *Dunnigan v. Cobourn,* 169 Md. 110, 113; *McMillan v. State,* 68 Md. 307, 308; *Elliott v. Larrimore,* 203 Md. 526, 528.

Dunn, the appellee, filed an action of assumpsit against Greenberg, the appellant, in the Superior Court. After Judge Cullen held that Dunn's prayer for a jury trial had been filed too late under Rule 545 of the Rules of the Supreme Bench, the case was entered on the non-jury docket.

Dunn then made a suggestion for removal which Judge Foster granted. Greenberg moved for rescission of the order of removal and his motion was denied.

The appellant's contention is that, with specified exceptions not here pertinent, such as trials of issue from the Orphans' Court, only a civil action at law in which there is presently an issue of fact to be decided by a jury may be removed as a matter of right under § 8 of Art. IV of the Constitution and the almost identical implementing statute, Code (1957), Art. 75, § 44, and rule, Maryland Rule 542. He gathers support for his po-

sition in the interpretation he finds this Court to have given the constitutional and implementing provisions.

In 2 Poe, *Practice* (Tiffany Ed.), § 93, the learned author says:

> "Under the constitutional and legislative enactments upon the subject, it is held that they do not apply to cases in equity, [*Cooke v. Cooke,* 41 Md. 362; *Olson v. Love,* 234 Md. 503, 504] nor to issues in insolvent proceedings [*Trayhern v. Hamill,* 53 Md. 90] nor to appeals from judgments of justices of the peace [*Geekie v. Harbourd,* 52 Md. 460] ; nor to proceedings instituted by direction of the Governor under sections 98 to 102 of article 23 of the Code, for the forfeiture of corporate franchises for abuse, misuse or non-use [*Bel Air Social Club v. State,* 74 Md. 297; *Hoshall v. Hoffacker,* 11 Md. 362] ; but are wholly directed to jury trials."

Mr. Poe's authority for his statement that the removal provisions "are wholly directed to jury trials" is the *Cooke* case. In there deciding that an equity case is not removable, Judge Miller, for the Court, suggested that it should not be assumed that the people would elect judges so unfit or prejudiced as to be unable to render fair and impartial judgments in cases where they are not connected with the parties or otherwise personally interested and that, in any event, an appeal lies from the judgment of the equity court upon questions of fact as well as of law by which a corrupt or prejudiced, as well as a mistaken, judgment can be speedily corrected. Judge Miller continued (pp. 371-72 of 41 Md.) :

> "But still further, not only is there no language in the clause which plainly directs it to prejudice in the judges, but, looking to the origin of the right or power, we find it directed wholly to jury trials, and this, we think, has never been lost sight of or departed from in any of the constitutional or legislative provisions on the subject. The object was to get rid of the influence of local prejudice in the community from which the jury to try the case was to come, and thus, as far

as practicable, to secure a fair and impartial trial by jury."

The reasoning of Judge Miller as to the appellate review of questions of fact as well as of law in equity cases would now under Maryland Rule 886 a, which conforms the scope of review of non-jury actions at law to the scope of review of actions in equity, apply to cases at law tried by a judge, although when he wrote and when the present constitutional provision was adopted in 1874, this was not true of cases at law.

Prior to the adoption in 1941 of then Rule 9c (now in essence Maryland Rule 886 a), see Code (1947 Cum. Supp.), General Rules of Practice and Procedure, Pt. Three, III, p. 2053, and Explanatory Note, pp. 2086-89, there was no appellate review on the facts in a non-jury law action, and so there was a closer analogy in this respect to appeals in jury cases than to appeals in equity cases. The late Judge Eli Frank (Frank, *His Day in Court,* 33 Proceedings, Md. State Bar Association 78, 90-92, quoted at pp. 2087-88 of the 1947 Cum. Supp.) explained the former practice:

"Under any trial system, where a case is heard before the judge alone, he necessarily decides both the law and facts. Under the practice prevailing in Maryland, he is required to instruct himself sitting as jury as to the law and having, as jury, determined the facts, to apply the law to them. His decisions upon the law are subject to review upon appeal. His determination of facts is final and subject to no review except his own, upon motion for a new trial. Occasionally judges have been accused of granting all the law asked for by the party against whom the decision is to be made and then deciding against that party on the facts. In this way, all opportunity for appeal to a higher tribunal is cut off. * * * Of course, no judge worthy of his responsible position would consciously proceed in such a manner, and yet the Bar has always experienced the fear that judges might be influenced by such an unworthy motive. On the other hand, in his effort to preserve to the defeated litigant an opportunity for ap-

peal, a conscientious judge might often lean backward and expose the successful party to the expense and delay of an appeal, where it would be improper to do so. I am convinced that much of the unpopularity of non-jury trials is to be attributed to the considerations just discussed."

It is true also, as Judge Miller and Mr. Poe say, that the removal provisions were adopted to offer and did contemplate primarily a method of escape from local community prejudice. The appellant points out that Judge Parke, speaking for the Court in *Baltimore v. Libowitz*, 159 Md. 28, in holding that a mandamus action was not removable, said (p. 31) :

"The evil to which the right of removal is addressed is the undue influence of local passion, prejudice, or interest, to which jurors as a class are peculiarly subject and responsive and which are often reflected in their verdicts to the injury of a litigant."

There is the further fact helpful to the position of the appellant, that, as Judge Parke notes in *Libowitz*, a case may be removed to a court in the same circuit and heard before the same judge who would have heard it in the first instance and who ordered it removed.

Although no Maryland case has held that a non-jury action at law is not removable, the appellant's argument that it is not is, under the language of the cases, a logical and effective exercise in persuasion.

Nevertheless we feel constrained to hold that a non-jury action at law is removable. The words of § 8 of Art. IV of the Constitution suggest that it is. That section begins in this way : "The parties to any cause may submit the same to the Court for determination without the aid of a jury, and in all suits or actions at law * * * upon suggestion in writing under oath of either of the parties * * * that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order * * * the record * * * to be transmitted to some other court * * *." The usual non-jury case in a law court is literally a "suit or action at law," and "all"

such suits or actions are declared to be removable. The word "all" leaves little, if any, room for exceptions as we have noted in *Spruell v. Blythe,* 215 Md. 117, 124, and *Food Fair Stores, Inc. v. Raynor,* 220 Md. 501, 512, wherein we adverted to the view of Justice Cardozo, speaking for the Court in *Baltimore National Bank v. State Tax Commission,* 297 U. S. 209, 212, 80 L. Ed. 586, 589, when he said: "* * * the burden is heavily on the suitor who would subject the word 'all' with its uncompromising generality to an unexpressed exception."

In addition, the statement in the Constitution of the right of removal of "all" such suits or actions follows in the same sentence the conferring of the right to waive a jury and have a non-jury determination of fact in suits or actions at law, and the inference that the exercise of the right to waive a jury did not cause a removable suit or action at law to become nonremovable flows easily from the arrangement and juxtaposition of the words used. We have invariably held that the constitutional provisions, the implementing statute and the implementing rule are to be liberally construed in favor of the right of removal, *Bullock v. State,* 230 Md. 280, 283, and that the constitutional guaranty of removal is not to be abridged. *Dunnigan v. Cobourn,* 169 Md. 110, 113.

Our reading of the removal provisions as allowing removal of a non-jury action at law is supported by the case of *Chappell Chemical and Fertilizer Co. v. Sulphur Mines Co. of Va.,* found among the unreported cases in 85 Md. 684, reported in full in 36 Atl. 712, *aff'd,* 172 U. S. 474. There, Sulphur Mines Co. sued Chappell Fertilizer in the Baltimore City Court. "Neither party demanded a jury trial, and, under rule 50 of the supreme bench, the case was placed on the 'non-jury docket,' to be tried by the judge at large." After various delays and legal maneuvers Chappell Fertilizer prayed a removal. The prayer was granted and the case was sent to the Superior Court of Baltimore City, where it took its place on the non-jury docket and was set for trial. Despite efforts by Chappell Fertilizer to remove it to the United States District Court, the trial was had and judgment entered by the Superior Court for the Mines Company. On appeal Chappell Fertilizer complained among other things that it had not been granted a jury trial in the Superior

Court. The Court of Appeals affirmed the judgment, holding that since a jury trial had not been timely prayed in the City Court, the right to a jury trial had been lost, and said (p. 713) :

"The removal of the case to the superior court did not change the status of the case. That was fixed in the Baltimore city court, and it went to the superior court just as it stood in the city court when the order of removal was passed; otherwise, when a cause was removed from one court to another, the proceedings would have to be gone over de novo after every removal. Such a practice would be intolerable. *Gordon's Case,* 30 Md. 235; *Davis' Case,* 39 Md. 383; *Holt's Case,* 81 Md. 220, 31 Atl. 809."

This Court went on to hold that a removal from the City Court to the Superior Court was proper, saying (p. 714) :

"The removal of the case to the superior court was such a removal as is contemplated by law, and fully gratified the appellant's petition for removal to another court. Act 1894, c. 392, expressly authorizes this practice, and this court has said that such a removal 'gratifies' the constitutional provision for a removal to some other court having jurisdiction. *Weiskettle v. State,* 58 Md. 158. The fact that, when it reached the superior court, the case was tried before the same judge before whom it was to have been tried in the city court, does not affect the case. The intent and purpose of the constitutional provision for the removal of causes was to avoid any prejudice which might affect a jury. The framers of the constitution never anticipated that the people would elect judges 'with minds so affected by prejudice as to be unable to render fair and impartial verdicts in cases where they are in no way connected with the parties, nor have been counsel, and have no pecuniary interest.' *Cooke v. Cooke,* 41 Md. 371. Hence the constant practice in the several circuit courts is to remove cases from one county to another, in the same circuit, and where they will be tried before the same judges."

Although the question of the power and right to remove a non-jury action at law was not specifically raised below or on appeal, nor passed on by the Court in *Chappell,* the opinion and decision clearly assumed that such a power and right existed since the removal served as a basis for the questions decided, including the ruling that a case which is non-jury in the transferring court continues to be non-jury in the court to which it is transferred and the holding that the judge who ordered the transfer may, if otherwise qualified, hear the case in its new location.[1]

Further support for the view that non-jury law cases are removable is found in the fact, which we notice judicially, that the removal of non-jury actions at law has over the years, in line with the procedures in *Chappell,* been regularly granted in Baltimore City and most of the Counties of Maryland, particularly the more populous Counties.

*Chappell* was cited by Judge Parke in the *Libowitz* case (159 Md. at 31) for the proposition that the same judge could remove and preside at the trial after removal. It is significant then, we think, that Judge Parke soon thereafter in the opinion said: "* * * it would seem to follow that the action in which a removal is permitted is one at law, in which there must be at least both an issue of fact and a *right* of trial by jury." (Emphasis supplied.) This significance is not diminished by his further statement (p. 32) :

> "Every one of these common law and statutory actions [assumpsit, case, debt, trover, ejectment, replevin, scire facias, trespass, attachment and a negro's petition against his owner for freedom] met the test for inclusion within the constitutional amendment [of 1804, now, under the amendment of 1874, § 8 of Art. IV of the Constitution], since in the trial of every one there would arise on the plea an issue of fact for determination by a jury, *unless submitted by agree-*

---

1. Ironically, Dunn, in the case before us told us at the argument that a main reason for his wanting the removal was because he thought he could have a jury trial in the court to which his case was transferred.

*ment to the court.* It is necessary to conclude that these common law and statutory actions were actions at law within the meaning of the amendment." (Emphasis added.)

Judge Parke spoke for the Court later in the *Cobourn* case, cited above, when he said (169 Md. at 113) : "In every action or suit at law that is pending in any court of original jurisdiction, the right of removal exists, provided the party suggests in writing, under oath, that he cannot have a fair and impartial trial in the court in which the action or suit is pending."

In light of the language of the constitutional provisions, the *Chappell* case, the general practice and the suggestions in *Libowitz* and *Cobourn,* we conclude that if an action at law in which there is a right to a jury trial is removable that same action is also removable if the determination of the facts has been submitted to the court.

*Orders appealed from affirmed, with costs.*