DILLON ET UX. *v.* WHITE'S FERRY, INC.

[No. 177, September Term, 1972.]

*Decided February 8, 1973.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Frank S. Cornelius,* with whom were *Charles W. Bell, John T. Bell* and *Bell & Bell* on the brief, for appellants.

*Rex L. Sturm,* with whom were *Brown & Sturm* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

From the time this case was docketed 7 September 1971 in the Circuit Court for Montgomery County, which is a part of the Sixth Judicial Circuit, until the filing of the motion which gave rise to this appeal, Rule 542 of the Sixth Circuit was in effect. In substance, this Rule provided that a party's right of removal shall be regarded as having been waived unless a written suggestion of removal shall have been filed within 45 days after a case is at issue.[1]

Concomitantly, Maryland Constitution, Art. IV, § 8, which conditions a party's right of removal on the filing of a "suggestion in writing under oath," was also controlling.[2]

---

1. "Rule 542. The right of removal of all actions at law, issues from the Orphans' Court or from any court sitting in equity or appeals from the Workmen's Compensation Commission shall be waived by a party unless a written suggestion is filed within 45 days after such cause is at issue or when any such issue or appeal is filed, or within 45 days of the docketing of any such cause being removed from a Court outside of the Sixth Judicial Circuit, unless a party making the suggestion can make it satisfactorily appear to the Court that there is reasonable ground for the same."

2. "Section 8. Removal of causes.

"The parties to any cause may submit the same to the Court for determination without the aid of a jury, and in all suits or actions, at law issues from the Orphans Court, or from any court sitting in equity and in all cases of Presentments or indictments for offences, which are or may be punishable by death, pending in any of the courts of law in this State having jurisdiction thereof upon suggestion in writing under oath of either of the parties to said proceedings that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record of proceedings in such suit **or**

On 26 November 1971, the Dillons, defendants below and appellants here, filed a suggestion of removal, which was not under oath. At that time, the case was not at issue but became so when the Dillons' plea was filed on 2 December 1971. Five days later, the trial court denied the Dillons' suggestion of removal because it failed to comply with the mandate of our Constitution that it be under oath. From 2 December 1971, 45 days passed during which the Dillons did nothing.

Finally, on 25 May 1971, the Dillons filed a suggestion and affidavit of removal, in proper form. From an order of 5 June 1972, denying the suggestion, the Dillons have appealed.[3]

---

action, issue presentment, or indictment, to be transmitted to some other court having jurisdiction in such case for trial, but in all other cases of presentment or indictment, pending in any of the Courts of law in this State having jurisdiction thereof, in addition to the suggestion in writing of either of the parties to such presentment or indictment that such party cannot have a fair and impartial trial in the court in which the same may be pending, it shall be necessary for the party making such suggestion to make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same, And thereupon the said court shall order and direct the record of proceedings in such presentment or indictment to be transmitted to some other Court having jurisdiction in such cases for trial and such right of removal shall exist upon suggestion in cases where all the Judges of said Court may be disqualified under the provisions of this Constitution to sit in any such case and said Court to which the record of proceedings in such suit, or action, issue, presentment or indictment may be so transmitted shall hear and determine the same in like manner as if such suit or action, issue, presentment or indictment had been originally instituted therein, and the General Assembly shall make such modification of existing law as may be necessary to regulate and give force to this provision."

3. It should be emphasized that the case is not controlled by Maryland Rule 542 a. 3 Code (1957, 1971 Repl. Vol. 9B, 1972 Supp.) which became effective 1 June 1972. It differs from the Sixth Circuit rule in requiring that the suggestion be filed within 60 days:

"3. Waiver of Right.

"The right of removal provided for in this Rule is waived by a party unless the written suggestion is filed within sixty (60) days after the action is at issue or after an issue from an Orphans' Court or appeal from a Workmen's Compensation Commission is filed, or within sixty (60) days of the docketing of any action removed from another county or transferred from the District Court. Thereafter an action may be removed only by order of court for good cause shown."

In *Shreffler v. Morris*, 262 Md. 161, 277 A. 2d 62 (1971), we upheld the validity of Sixth Circuit Rule 542. For the reasons which underlay the Rule, *see Smith v. Fredericktown Bank & Trust Co.*, 258 Md. 141, 143-44, 265 A. 2d 236 (1970) and 2 Poe, *Pleading and Practice* § 103 at 79-80 (5th ed. Tiffany 1925).

The appellants advance the tenuous contention that the nonconforming suggestion of removal which they filed on 26 November 1971 was either legitimatized by the suggestion which they filed in proper form on 25 May 1972, or alternatively, that it should be regarded as evidence of an intent not to waive their right of removal. They argue that the denial of the May suggestion somehow amounts to an infringement of their constitutional rights.

While a constitutional provision granting the right of removal is to be liberally construed, such right "may be subject to reasonable procedural restraint to promote administration of justice," *Shreffler v. Morris, supra,* 262 Md. at 169. As the Supreme Court commented in a parallel situation, "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right. . . ." *Yakus v. United States,* 321 U. S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944) ; *Singer v. United States,* 380 U. S. 24, 36-37, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965) ; *Michel v. Louisiana,* 350 U. S. 91, 99, 76 S. Ct. 158, 100 L. Ed. 83 (1955) ; *Williams v. Georgia,* 349 U. S. 375, 382-83, 75 S. Ct. 814, 99 L. Ed. 1161 (1955). This Court requires faithful and seasonable compliance with the constitutional provisions upon which effective removal is conditioned. The facts in this case indicate an "intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U. S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) and a resultant acquiescence in the jurisdiction of the court in which the action was first brought. To hold otherwise would be to defeat the intent of the Rule and its policy of minimizing opportunities for the use of

dilatory tactics in pretrial procedure through reasonable regulation. *See Smith v. Fredericktown Bank & Trust Co., supra,* 258 Md. at 143-44 and *Houston v. Lloyd's Consumer Acceptance Corp.,* 241 Md. 10, 14-24, 215 A. 2d 192 (1965).

The short answer is that pleading, although now stripped of many of its hoary technicalities, may still be likened to a game which must be played by the rules, one of which is that the play is over when the whistle blows.[4] For a period of 45 days from 2 December 1971, when the case was at issue, and certainly for a period of 40 days from 7 December 1971, when their first suggestion of removal was denied, the Dillons knew that they had missed the mark. That they did not endeavor to cure the deficiency until 25 May 1972 was a choice which was theirs alone, and by then the game was over.

*Order affirmed, costs to be paid by appellants.*

---

**4.** We are not unmindful of the general validity of Professor Graham Hughes' warning that "... there are important respects in which the analogy between playing a game and participating in a legal system breaks down . . . ," Hughes, *Rules, Policy and Decision Making,* 77 Yale L. J. 411, 414 (1968), which is directed against over-reliance on game analogies in a philosophical analysis of a legal system.